## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

BYRON JOSEPH KNOX,      )
      )
    Plaintiff,      )
      )
v.      )      CIVIL ACTION NO. 5:06-00225
      )
WARDEN JOYCE K. CONLEY,      )
      )
    Defendant.      )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Defendant's Motion to Dismiss for Insufficient Service of Process and for Failure to State a Claim (Doc. No. 13.), filed on January 16, 2007. Having fully examined the record in this case, the undersigned has determined that Defendant's Motion should be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2006, Plaintiff, Byron Joseph Knox, acting *pro se,* and then incarcerated at FCI Beckley, in Beaver, West Virginia,[1] initiated this action for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2] (Doc. No. 1.) Plaintiff asserts that while incarcerated at FCI Beckley, he was diagnosed by Dr. Robert O. Bateman, M.D., as having "bunions, pes planus with allux varus and valgus deviation in all toes." (Doc. No. 1 at 8.) He further asserts that Dr. Bateman

---

[1] The Court understands that Plaintiff is currently confined at FCI Petersburg, Petersburg, Virginia. (Doc. No. 13, Exhibit 1 at ¶ 3.) Plaintiff's claims, however, arise out of the medical treatment, or alleged lack thereof, while incarcerated at FCI Beckley.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Case 5:06-cv-00225   Document 22   Filed 08/08/07   Page 2 of 12 PageID #: 125

prescribed corrective shoes and recommended surgery as "necessary" treatment.[3] (Id.) Plaintiff alleges

that he was neither provided the corrective shoes nor the surgery while confined at FCI Beckley. (Id.)

He states that he was placed in food service on three occasions and required to wear steel toe boots for

---

[3] Plaintiff's medical records while he was incarcerated at FCI Beckley reveal that he was examined by Dr. Bateman on November 9, 1999, and was diagnosed with "marked pes planus with hallux varus and valgus deviation in all of his toes." (Doc. No. 17, Exhibit 1 at 10.) Dr. Bateman's suggested treatment was for Plaintiff "to see the orthotist for corrective type shoes that are soft, bunion with an arch support in and then eventually he will need surgical reconstruction of his bunions." (Id.) On January 4, 2000, A. Lett, CPO, Contract Orthotist, examined Plaintiff and measured him for "orthopedic extradepth boots/shoe." (Doc. No. 20, Exhibit 1 at 4.) Dr. Lett noted that he would provide Plaintiff with "foot orthotics and fit when approved." (Id.) Plaintiff was assigned a restricted duty medical classification status on January 13, 2000, restricting him from jobs at the prison requiring him to wear steel toe shoes, and noting that he required "extra depth ortho-type wide shank boots." (Doc. No. 17, Exhibit 1 at 12.) Dr. Bateman re-examined Plaintiff on February 3, 2000, and noted that he had "moderate bunions, severe" and that he needed an evaluation for corrective type shoes. (Id. at 8.) Dr. Bateman noted that Plaintiff had shoes which were too big and had no arch support. (Id.) He opined that Plaintiff "will eventually need to have a bunionectomy, but he will need to have his shoes so after the bunionectomy he will have something to wear. Before we can proceed, he will need to be fitted for corrective shoes." (Id.) On February 15, 2000, Plaintiff was evaluated by Dr. Lett for the purpose of fitting him for corrective shoes. (Id. at 11.) Dr. Lett noted:

> [Plainitff] is insisting on a high top with a lug type sole with soft insole which is in the current shoe. However, I also will need to modify the arch supports due to the fact that his current ones are collapsed. He also requested steel toes. Will follow up as instructed.

(Id.)

Dr. Lett performed a follow-up evaluation on December 12, 2000, at which time he noted that Plaintiff needed "fit with wider boot ironage with oblogor oblique toe box. (Box toe not pointed). This can be done here. I may need to provide new insoles later." (Doc. No. 20, Exhibit 1 at 15.) On January 22, February 4, March 1, and March 2, 2001, Plaintiff submitted "Requests for Administrative Remedy Informal Resolution Forms," in which he requested to see Dr. McLain regarding the pain in his feet, the scheduling of surgery, and the failure of Health Services to provide him with boots or soft tennis shoes. (Id. at 10-13.) In response to his requests, J. Kirkland, R.N., advised that "[b]union surgery is not indicated on your feet" and that he was "referred to laundry to have boots properly fitted for your feet." (Id. at 11-12.) On May 15, 2001, Dr. Lett advised: "Pt. should have been seen. He was in SHU. I did evaluate boots. They are exactly what I would have order[ed] for him. I don't think that I can provide anything that would help any more." (Doc. No. 17, Exhibit 1 at 13.) K. Kaiser, PA-C, noted on April 16, 2002, that he had Plaintiff's orthotic boots in his office but that Plaintiff would not wear them. (Doc. No. 20, Exhibit 1 at 23.)

a period of time. Plaintiff alleges that this work exceeded his physical capacity and exacerbated the excruciating pain in his feet. (Id. at 11-12.) Plaintiff alleges that the foregoing actions and inactions constitute deliberate indifference in violation of his Eight Amendment rights. (Doc. No. 1.) Plaintiff seeks nominal and punitive damages. (Id. at 16-18.) By Standing Order filed on March 27, 2006 (Doc. No. 3.), this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

On November 8, 2006, the undersigned entered an Order granting Plaintiff's Application to Proceed *in Forma Pauperis* (Doc. No. 6.), and a Summons was issued by the Clerk of the Court to Defendant. (Doc. No. 7.) On January 16, 2007, Defendant filed a Motion to Dismiss and Memorandum of Law in Support. (Doc. Nos. 13 and 14.) Defendant attaches the Declaration of Sharon Wahl, Legal Instruments Examiner for the Consolidated Legal Center at FCI Beckley to her Motion to Dismiss. (Doc. No. 13, Exhibit 1.) As grounds for dismissal, Defendant contends that service of process was insufficient and that this action is barred by the two-year statute of limitations. (Doc. Nos. 13 and 14.) With respect to the first issue, Defendant states that the Summons and Complaint was issued to "Warden, FCI Beckley," and not to Joyce K. Conley. (Doc. No. 14 at 3.) Then Warden of FCI Beckley, Charles T. Felts, received, via certified mail, the service of process issued to "Warden, FCI Beckley" on November 13, 2006. (Id.; Doc. No. 8.) Defendant further states that the United States was not properly served as service was not made upon the Attorney General as required by Rule 4(I)(1) of the Federal Rules of Civil Procedure. (Doc. No. 14 at 3-4.) As Plaintiff failed to effect proper service on the only named Defendant in this action, Defendant alleges that this action should be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure for insufficient service of process.

Respecting the second issue, Defendant contends that Plaintiff's civil action is barred by the two-year statute of limitations as provided in West Virginia Code § 55-2-12. (Doc. No. 14 at 5.) Defendant states that Plaintiff complains of conduct which occurred only at FCI Beckley and that he has not been incarcerated at FCI Beckley since October 22, 2002. (Id.) Defendant argues therefore, that this action accrued on October 22, 2002, at the latest, and must be dismissed as being barred by the statute of limitations. (Id. at 5-6.)

On January 25, 2007, Plaintiff filed his Response to Defendant's Motion to Dismiss. (Doc. No. 17.) Plaintiff asserts that the Declaration of Sharon Wahl is factually incorrect as he was incarcerated at FCI Beckley from November 9, 1999, until 2002, as evidenced by the medical records and grievances attached to his Response. (Id.) Plaintiff further asserts that he "properly served all parties through the court," and that this action should not be dismissed for insufficient service of process. (Id.) Plaintiff attached to her response portions of her medical records and administrative remedy requests in connection with her incarceration at FCI Beckley. (Id. at Exhibit 1.)

Defendant filed her Reply on January 29, 2007, in which she concedes that Plaintiff was correct in noting that he was incarcerated at FCI Beckley prior to September 8, 2000. (Doc. No. 18.) Defendant states that Plaintiff was originally designated to FCI Beckley on September 16, 1999, where he remained until March 3, 2000. (Id. at 2.) From March 3, 2000, through September 8, 2000, Plaintiff was in transit at various holdover facilities. (Id.) He was re-designated to FCI Beckley on September 8, 2000, where he remained until October 22, 2002. (Id.) Nevertheless, Defendant contends that "[f]or purposes of the Motion to Dismiss, Plaintiff's initial time served at FCI Beckley from September 16, 1999, to March 3, 2000, does not have any bearing on the arguments contained therein." (Id.) Defendant attaches the Second Declaration of Sharon Wahl to her Reply. (Id. at 4-5.)

4

Notwithstanding Plaintiff's Response, by Order entered March 14, 2007, the undersigned notified Plaintiff of his right, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), to file a response to Defendant's Motion to Dismiss. (Doc. No. 19.) On April 2, 2007, Plaintiff filed a further Response to Defendant's Motion. (Doc. No. 20.) Plaintiff asserts that he attempted to file a Complaint against Defendant in 2002, but that the staff of FCI Beckley thwarted his attempts to do so. (Doc. No. 20 at 1.) Plaintiff states:

> Your Honor, I tried to file a Complaint on Warden Joyce K. Conley in 2002. I wrote a letter to the Clerk of Court, trying to get some law suit forms, I also wrote in my letter that I was going to file a complaint. Most of the time I didn't get my mail the staff was working together trying to take all my paper work that I had for evidence. They kept locking me up in the hole and everytime I got out of the hole, my paper work would be missing.
> * * *
> If the staff at FCI Beckley wouldn't have took my legal paperwork I could have filed my complaint in 2002.
> * * *
> I also feel that somebody put something in my file, because everytime I tried to get my complaint in court it never makes it until I got some protection from U.S. Senator Ms. Elizabeth Dole and U.S. Senator Mr. Richard Burr in 2004. God bless them. After how the officers at FCI Beckley treated me and other inmates, I have not been right since.
>
> Your Honor I also sent you copies of my medical file showing that they had me in the SHU (hole). Everytime, I go to the [SHU], the staff steals my legal paper work, so I wouldn't have any evidence to file my lawsuit.
>
> I feel that this case should not be dismissed, due to the Intimidation, Threatening, Harassment by staff at FCI Beckley, due to all my missing documents that they took out of my property when they put me in the shoe (SHU) for no reason, this is why it took me so long to get the complaint in court.

(Doc. No. 20 at 2-3.) Plaintiff attaches to his Response copies of various medical records and administrative grievances. (Doc. No. 20, Exhibit 1.)

## THE APPLICABLE STANDARD

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

5

requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). Where a *pro se* Complaint can be remedied by an amendment, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims). A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional

violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 1000, 1005-06, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

Furthermore, a Plaintiff must file a Bivens action within the prescribed time period. Because there is no federally prescribed statute of limitations, Courts look to and apply their respective State's statutes of limitation. See Wilson v. Garcia, 471 U.S. 261, 266-69, 105 S.Ct. 1938, 1942-43, 85 L.Ed.2d 254 (1985). Under West Virginia law, the applicable period of limitation upon Plaintiff's right to file this civil action was two years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[4] Although the limitation period is borrowed from State law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(*en banc*), *cert. denied*, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(*citing* United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await

---

[4] West Virginia Code § 55-2-12 provides as follows:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

awareness by the plaintiff that his injury was negligently inflicted.'" <u>Nasim</u>, 64 F.3d at 955 (*quoting*, <u>Childers Oil Co., Inc. v. Exxon Corp.</u>, 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a <u>Bivens</u> action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." <u>Nasim</u>, 64 F.3d at 955.

Federal Courts also apply the forum State's law regarding tolling, including equitable tolling, when not inconsistent with federal law. <u>Hardin v. Straub</u>, 490 U.S. 536, 537 - 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989.) In <u>Irwin v. Dep't of Veteran's Affairs</u>, 498 U.S. 89, 97, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990), the United States Supreme Court recognized that statutes of limitations in actions against the government are subject to a rebuttable presumption of equitable tolling. The <u>Irwin</u> Court stated that equitable tolling should apply in cases "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." <u>Id.</u> Federal Courts have held that because the Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhausts the remedies. <u>See</u> <u>Clifford v. Gibbs</u>, 298 F.3d 328, 333 (5th Cir. 2002); <u>Brown v. Morgan</u>, 209 F.3d 595 (6th Cir. 2000); <u>Howard v. Mendez</u>, 304 F.Supp.2d 632, 638 (M.D.Pa. 2004)(a <u>Bivens</u> case); <u>Aguirre-Castillo v. United States</u>, 2004 WL 594105 (N.D.Tex.)(a <u>Bivens</u>/FTCA case); <u>Lopez v. S.C.D.C.</u>, 2007 WL 2021875 (D.S.C.) at *2.[5]

---

[5] The undersigned notes that, intending to alleviate the harsh application of *W.Va.Code* § 55-2-12, the West Virginia Legislature enacted *W.Va.Code* § 55-2-18 providing that the *W.Va.Code* § 55-2-12 two-year limitation period is extended for one year when an action has been involuntarily dismissed without a determination of the merits and when a judgment was reversed on grounds not precluding the filing of a new action. The undersigned finds this some indication in West Virginia statutory law that the initiation of proceedings which do not culminate in a final determination on

Applying the West Virginia statute of limitations, together with the federal standard of accrual, it is clear from the face of Plaintiff's Complaint that his cause of action accrued on November 16, 2000, the date on which he filed his Request for Administrative Remedy, Form BP-9, at FCI Beckley,[6] and is therefore, barred by the statute of limitations. On November 16, 2000, Plaintiff "possessed sufficient knowledge of his cause of action ... to place him on inquiry notice." See Nasim, 64 F.3d at 956. At that time, Plaintiff requested bunion surgery on both feet and was aware that the corrective shoes were intended, in part, to alleviate the discomfort related to his bunions. The statute of limitations, however, was tolled while Plaintiff exhausted his administrative remedies at FCI Beckley. It appears that Plaintiff's administrative remedy process was concluded with the Response to Plaintiff's BP-11, from Harrell Watts, Administrator, National Inmate Appeals, on March 29, 2002. (Doc. No. 17, Exhibit 1 at 6.) The statute of limitations therefore, began to run on March 30, 2002, and Plaintiff had until March 29, 2004, to file his civil rights action against Defendant, barring circumstances which would toll the running of the limitation period.[7]

----

the merits will effectively extend or toll the limitations period for filing suit by one year.

[6] As part of the Administrative Remedy Process, Plaintiff was required to submit an "Inmate Request to Staff Member" form. Plaintiff attached to his Response copies of such forms dated January 22, February 4, and March 1, 2000. (Doc. No. 20, Exhibit 1 at 11-13.) Given the time between the submission of these forms and the filing of his BP-9 form to Defendant, dated November 16, 2000, the undersigned presumes that the "Inmate Request to Staff Member" forms submitted were not the forms giving rise to the BP-9. The undersigned therefore, considers the date of his BP-9 form as the accrual date of his claims.

[7] Plaintiff has provided the Court with copies of only a few of his administrative remedy forms filed at FCI Beckley, the latest of which was the March 29, 2002, Response from the Office of General Counsel. To the extent that Plaintiff filed further administrative grievances concerning the alleged lack of corrective shoes and surgery at FCI Beckley, the statute of limitations was tolled during their pendency. The undersigned notes that if any further grievances exist, they do not change the fact that the limitation period had run before Plaintiff filed his instant Complaint, as he was released or transferred from FCI Beckley on October 22, 2002, and there is no indication that subsequent grievances were defective.

9

It is also clear that the circumstances of this matter do not justify further equitable tolling of the statute of limitations. Plaintiff asserts that he exhausted his administrative remedies at FCI Beckley by filing the Form BP-8, 9, 10, and 11, and there is no indication that any of his grievances were summarily denied as being defective. (Doc. No. 1 at 1.) Plaintiff attaches to his Responses copies of Defendant's Response to his BP-9 request, dated December 11, 2000, together with his BP-11 Request, dated January 13, 2002, and the Office of General Counsel's Response, dated March 29, 2002. (Doc. No. 17, Exhibit 1 at 5-6 and Doc. No. 20, Exhibit 1 at 20.) These documents evidence Plaintiff's complaints concerning the lack of corrective shoes and the failure of Defendant to provide surgery on his bunions. (Id.) Both Defendant and Harrell Watts responded to Plaintiff's grievances in substance, and the evidence does not indicate that their responses were designed to mislead Plaintiff in an attempt to allow the filing deadline to pass. Rather, it appears that Plaintiff's Complaint was untimely filed based on his misunderstanding of the law. Plaintiff asserts that his Complaint is timely because he did not receive "confirmation that his claim was supportable against the Respondent" until October 4, 2005, when the Office of General Counsel granted the relief requested in his administrative grievances, and found that he should have the recommended surgery.[8] (Doc. No. 1 at 9.) The accrual of Plaintiff's

---

[8] While incarcerated at FCI Butner, Plaintiff again pursued the Federal Bureau of Prisons' Administrative Remedy Process, alleging that he was denied proper medical care due to the Prison's failure to perform surgery on his feet. (Doc. No. 17, Exhibit 1 at 3-4.) By Response dated October 4, 2005, Harrell Watts granted Plaintiff's request for surgery. (Id. at 4.) Mr. Watts stated:

> Relevant portions of your medical record have been reviewed and discussion with LSCI Butner reveal you have been diagnosed with hallux valgus and pes planus in both feet. You have been evaluated by a consultant orthopedic surgeon who has recommended surgery. The Utilization Review Committee reviewed the consultant orthopedic surgeon's recommendation for surgery and approved you to receive surgery on your feet. The surgery has not been scheduled at the present time, however, LSCI Butner medical staff are in the process of doing so.

(Id.) It appears that Plaintiff was examined at LSCI Butner by R.L. Hall, M.D., Orthopedic Surgeon, on August 16, 2005, and September 13, 2005, although the record does not contain a copy of Mr. Hall's recommendation for surgery. (Id. at 7, 9.)

claims, however, did not await his awareness that Defendant's actions were deliberate. See Nasim, 64 F.3d at 955. Plaintiff filed his instant Complaint on March 26, 2006, nearly two years after the limitation period had run. Although Plaintiff alleges that the staff at FCI Beckley impeded his ability to file a complaint in 2002, there is no indication that he was prevented from filing a complaint after he was transferred to other institutions, beginning October 22, 2002. Accordingly, the two year statute of limitations has run and Plaintiff's claims are barred. As Plaintiff has not advanced a legitimate ground justifying equitable tolling of the statute of limitations,[9] his Complaint must be dismissed. Because the undersigned finds that Plaintiff's Complaint must be dismissed as it is barred by the two-year statute of limitations, the undersigned does not address the issue of insufficiency of service of process as raised in Defendant's Motion to Dismiss.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss (Doc. No. 13.), **DISMISS** this case without prejudice, and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and

---

[9] The Court notes that Plaintiff indicates that he has a related civil rights action pending in the District Court for the Eastern District of Virginia, *Knox v. Brooks*, Civil Action No. 2:06-cv-00221, which was filed April 21, 2006.

11

Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same to counsel of record and to Plaintiff, who is acting *pro se*.

DATE: August 8, 2007.

R. Clarke VanDervort
United States Magistrate Judge